## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

**KENDALL OLIN-MARQUEZ,** on behalf of
herself and others similarly situated,

        **Plaintiff,**

    **v.**　　　　　　　　　　　　　　　**Case No. 2:21-cv-996**
　　　　　　　　　　　　　　　　　**JUDGE EDMUND A. SARGUS, JR.**
**ARROW SENIOR LIVING**　　　　　　**Magistrate Judge Chelsey M. Vascura**
**MANAGEMENT, LLC,**

        **Defendant.**

### OPINION AND ORDER

The matter is before the Court on Defendant Arrow Senior Living Management, LLC's ("Defendant" or "Arrow") Motion to Dismiss for Lack of Personal Jurisdiction (the "Motion to Dismiss") (ECF No. 49) and Motion to Transfer Venue (the "Motion to Transfer") (ECF No. 50). For the reasons stated herein, the Court **DENIES** both motions. (ECF Nos. 49, 50.)

### I.　　BACKGROUND

Plaintiff Kendall Olin-Marquez alleges that she is a former employee of Defendant Arrow and that, throughout the course of her employment, Defendant failed to pay her and other "similarly situated" employees overtime compensation that they were legally owed. (Pl.'s Third Amended Compl., ECF No. 46.) Originally, Plaintiff chose to represent a "nationwide" FLSA collective—that is, a collective of all "similarly situated" individuals who were or are employed by Defendant throughout the United States. (*See* ECF No. 1.) Pursuant to the United States Court of Appeals for the Sixth Circuit's decision in *Canaday v. Anthem Cos., Inc.*, 9 F.4th 392 (6th Cir. 2021), Plaintiff now only seeks to represent Defendant's Ohio-based employees. (ECF Nos. 44, 46.) Defendant, however, argues that, for various reasons, Plaintiff should be required to litigate her claims in the Eastern District of Missouri, where a parallel FLSA collective action launched

1

by Defendant's alleged non-Ohio employees is now pending. *See Roberts et al. v. Arrow Senior Living Management, LLC*, Case No. 4:21-cv-01370-HEA (E.D. Mo. Nov. 19, 2021).

A.      **Procedural History**

On March 10, 2021, Plaintiff filed suit against Defendant, bringing claims under (1) the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. §§ 201, *et seq*., (2) the Ohio Minimum Fair Wage Standard Act ("OMFWSA"), Ohio Rev. Code § 4111.03, and (3) the Ohio Prompt Pay Act ("OPPA"), Ohio Rev. Code § 4113.15.  (ECF No. 1.)  After amending her initial complaint, Plaintiff moved to conditionally certify a nationwide FLSA collective pursuant to 29 U.S.C. § 216(b) on June 7, 2021.  (ECF No. 33.)  Thereafter, on June 17, 2021, Defendant moved to dismiss Plaintiff's claims for lack of personal jurisdiction.  (ECF No. 34.)

On August 17, 2021, the Sixth Circuit issued *Canaday*. *See* 9 F.4th at 392. That decision spurred Plaintiff to narrow her putative FLSA collective to solely include Defendant's Ohio employees. (ECF Nos. 44, 46, 66); *see Canaday*, 9. F.4th at 397 ("Where, as here, nonresident plaintiffs opt into a putative collective action under the FLSA, a court may not exercise specific personal jurisdiction over claims unrelated to the defendant's conduct in the forum State.")  On September 30, 2021, Plaintiff's counsel informed Defendant that they planned to launch a separate FLSA collective action on behalf of Defendant's non-Ohio employees in the Eastern District of Missouri, where Defendant is both organized and headquartered.  (Def.'s Ex. A, ECF No. 50-1.) Several days later, on October 5, 2021, Plaintiff filed her Third Amended Complaint (the "Complaint").  (ECF No. 46.)

On October 18, 2021, Defendant filed its amended Motion to Dismiss for Lack of Personal Jurisdiction (ECF No. 49) and Motion to Transfer (ECF No. 50), both of which are fully briefed. (*See* ECF Nos. 60, 61, 62, 63.) On November 22, 2021, Defendant filed a supplemental memorandum in support of its Motion to Transfer which informed the Court that, as anticipated,

2

Plaintiff's counsel had filed a second FLSA collective action representing Defendant's non-Ohio employees in the Eastern District of Missouri (the "Missouri Case").  (ECF No. 64.)  Thus, Defendant asked this Court to "treat Defendant's pending Motion to Transfer as a Motion to Transfer and Consolidate."  *Id*.

On November 30, 2021, the parties jointly moved to conditionally certify Plaintiff's Ohio-based FLSA collective (the "Joint Motion").  (ECF No. 65.)  On December 17, 2021, the parties amended their Joint Motion, which asked the Court to conditionally certify the following class:

> All current and former hourly, non-exempt employees at any Arrow senior living community in Ohio who (1) were paid for forty (40) or more work hours in any workweek they were required to have a meal break deduction taken from their compensable hours worked and/or (2) were paid for more than forty (40) hours work hours in any workweek that they received nondiscretionary bonus payments, such as a retention bonus (often called a "Sign On Bonus") or a shift pick-up bonus, for working extra shifts or hours beyond what the employee was scheduled to work from June 7, 2018 to the present.

(ECF Nos. 66.)  In stipulating to conditional certification, Defendant indicated that it did not waive any argument made in its pending Motion to Dismiss and Motion to Transfer.  (*Id.*)

On February 10, 2022 this Court granted the parties' Joint Motion, conditionally certified the requested class, opened discovery, and approved the parties' proposed notice and consent forms.  (ECF No. 67.)

## II.  DEFENDANT'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

Ultimately, Defendant seeks to have Plaintiff's action transferred to the Eastern District of Missouri.  (*See* Def.'s Mot. to Transfer, ECF No. 50.)  Defendant argues, in part, that such a transfer is necessary because, as set forth in its Motion to Dismiss, the Court lacks personal jurisdiction over it.  (*Id.*)  Accordingly, the Court addresses Defendant's Motion to Dismiss first.

A.      **The Parties**

Defendant Arrow is a Missouri limited liability company with its principal place of business in St. Charles, Missouri. (ECF No. 46 at ¶ 8; ECF No. 49 at PageID #525.)  It alleges that it is not registered to do business in the State of Ohio and that it is a subsidiary of Turnaround Solutions, LLC, which is also incorporated and principally based in Missouri.  (ECF No. 49 at PageID #525.)  Defendant states that it provides "accounting, bookkeeping, quality assurance[,] and regional operational support" for "Single Purpose Entities" ("SPEs") that operate senior living communities across the nation.  (*Id.*)  One of those SPEs is Arrow Senior Living Hilliard, LLC ("Arrow Hilliard"), which, according to Defendant, independently operates the Carriage Court Senior Living facility (the "Carriage Court facility") in Hilliard, Ohio.  (*Id.* at PageID #523.)

Plaintiff Kendall Olin-Marquez is a former hourly "Care Partner" at the Carriage Court facility.  (ECF No. 46 at ¶ 5.)  She alleges that "Defendant has registered multiple business entities as part of its enterprise," and that, during her employment at the Carriage Court facility, Defendant paid her "through" one of those entities.  (*Id.* at ¶¶ 5, 10.)  Plaintiff states that Defendant manifested the same payment structure with thirty other senior living communities across the Midwest— "approximately fifteen" of which are located in the State of Ohio.  (*Id.* at ¶ 9.)

Plaintiff asserts that, at all relevant times, Defendant has "operated and managed" these communities, including the Carriage Court facility.  (*Id.*)  Plaintiff alleges that this duty, in turn, vests Defendant with "direct and indirect and control over" virtually every job facet of those communities' employees, including their (1) hiring and firing; (2) terms and conditions of employment; (3) working conditions and schedules; and (4) wage rates and methods of compensation.  (*Id.* at ¶¶ 18, 24, 25, 39.) Plaintiff lays out two separate theories as to how Defendant assumed this authority. First, she contends that Defendant manifested (and continues to govern) a "single integrated enterprise" by serving as the "parent company" of every senior living

4

community that it operates, including the Carriage Court facility.  (*Id.* at ¶¶ 9, 11.)  Alternatively, Plaintiff alleges that, at all relevant times, Defendant has constituted a "joint employer" of those communities' hourly, non-exempt employees.  (*Id.* at ¶¶ 9, 11, 22, 23.)

## B.    Standard of Review

The "procedural scheme" that district courts utilize to resolve motions to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(2) is "well-settled." *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991) (citing *Serras v. First Tennessee Bank Nat. Ass'n.*, 875 F.2d 1212, 1214 (6th Cir. 1989)). In all cases, the plaintiff bears the initial burden of "establishing that jurisdiction exists." *Serras* 875 F.2d at 1214. If the plaintiff meets that burden, it "then shifts to the defendant," who, through proper evidence, must demonstrate in his or her motion that personal jurisdiction does not exist. *Malone v. Stanley Black & Decker, Inc.*, 965 F.3d 499, 505 (6th Cir. 2020) (citing *Theunissen*, 935 F.2d at 1458). If that occurs, the burden shifts back "to the plaintiff, who may no longer 'stand on his pleadings but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction.'" *Id.*

The "weight" of the burden the plaintiff must ultimately carry in this burden-shifting framework is contingent on *when* the district court disposes of the defendant's Rule 12(b)(2) motion. *See Malone*, 965 F.3d at 505 (citing *Schneider v. Hardesty*, 669 F.3d 693, 697 (6th Cir. 2012)); *Serras*, 875 F.2d at 1214. If, for instance, a district court opts to resolve a defendant's Rule 12(b)(2) motion before any discovery has occurred and without holding an evidentiary hearing, the plaintiff is only required to make a "*prima facie* showing that personal jurisdiction exists." *Serras*, 875 F.2d at 1214. This, in turn, solely requires the plaintiff to demonstrate "with reasonable particularity" that the defendant's contacts with the forum state "support jurisdiction." *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002) (citation omitted). Simultaneously, the district court "must consider the pleadings and affidavits in the light most

favorable to the plaintiff." *Serras* 875 F.2d at 1214 (quoting *Welsh v. Gibbs*, 631 F.2d 436, 439 (6th Cir. 1980) (internal quotation marks omitted)). Moreover, it cannot "weigh the controverting assertions of the party seeking dismissal." *Theunissen*, 935 F.2d at 1459; *see also Malone*, 965 F.3d at 505-06; *Sizzling Black Rock Steak House Franchising, Inc. v. Harold L. Kestenbaum, P.C., et al.*, No. 21-cv-11621, 2021 WL 5989024, at *6 (E.D. Mich. Dec. 17, 2021) ("[I]f facts proffered by the defendant conflict with those offered by the plaintiff, a district court does not consider them."). It can, however, consider "the defendant's undisputed factual assertions[.]" *Conn v. Zakharov*, 667 F.3d 705, 711 (6th Cir. 2012) (citation omitted).

Here, neither party requested the Court to hold an evidentiary hearing or order limited discovery on the issue of personal jurisdiction. Nor does the Court believe that either procedure is required to properly rule on Defendant's Motion to Dismiss. Thus, it will resolve the matter based on the parties' written submissions.

## C.    Analysis

Where, as here, a district court's subject matter jurisdiction stems from the Plaintiff's enforcement of a federal statute, that court must apply a two-step inquiry to ascertain whether it has personal jurisdiction over the defendant. *See Bird v. Parsons*, 289 F.3d 865, 871 (6th Cir. 2002). Conceptually, this requires the Court to determine whether Plaintiff has alleged "with reasonable particularity" that (1) Defendant, by virtue of its "contacts" with the State of Ohio, rendered itself "amenable to service of process under the [forum] state's long-arm statute," and (2) the exercise of personal jurisdiction would comport with constitutional due-process principles. *See id.* (citation and internal quotation marks omitted).

Plaintiff solely relies upon one provision of the Ohio long-arm statute—§ 2307.382(A)(1)—to make her *prima facie* case that personal jurisdiction exists. (ECF Nos. 49 at PageID #529; 60 at PageID #661.)    Notably, the Ohio Supreme Court has held that §

2307.382(A)(1) is not coterminous with the due process requirements of the Fourteenth Amendment of the Federal Constitution. *See Cole v. Mileti*, 133 F.3d 433, 436 (6th Cir. 1998) (citing *Goldstein v. Christianson*, 70 Ohio St.3d 232 fn. 1 (1994) (per curiam) (overruling the lower court's determination that Ohio's General Assembly "intended" its long-arm statute "to give Ohio courts jurisdiction to the limits of due process" because "that interpretation would render the first part of the court's two-part analysis nugatory")). Accordingly, the Court will separately evaluate whether Plaintiff has met her *prima facie* burden under both prongs of the jurisdictional test.

### 1. Ohio's Long-Arm Statute

Section 2307.382(A)(1) provides that "a court may exercise personal jurisdiction over" an out-of-state-defendant when the relevant cause of action "aris[es] from" that defendant's "transacting" of "any business" within the State. The Ohio Supreme Court has observed that, in the context of this provision, "the term 'transact' . . . encompasses 'to carry on business' and 'to have dealings,' and is *broader* . . . than the word 'contract.'" *Goldstein* at 544 (citing *Kentucky Oaks Mall Co. v. Mitchell's Formal Wear, Inc.*, 53 Ohio St.3d 73, 559 N.E.2d 477, 480 (1990)) (emphasis added).

A non-resident defendant "need not 'have a physical presence in Ohio' to be transacting business there." *Ohio Valley Bank Comp. v. Metabank*, No. 2:19-cv-191, 2019 WL 4574528, at *4 (S.D. Ohio Sept. 20, 2019) (citation omitted). Generally, "[c]ourts examine three factors when determining whether a non-resident defendant has transacted business" under Ohio's long-arm statute: (1) whether the non-resident defendant "initiated the dealing," (2) "whether the parties conducted their negotiations or discussions in the forum state, or with terms affecting the forum state," and (3) whether the non-resident defendant manifested a "substantial connection" to Ohio.

*Id.* (citations omitted). While these factors are somewhat open-ended, they are cabined by the long-arm statute's "arises from" clause, which the Sixth Circuit Court of Appeals has interpreted to entail a "'proximate cause' relationship between" the defendant's business conduct and the plaintiff's cause of action. *See Brunner v. Hampson*, 441 F.3d 457, 466 (6th Cir. 2006).

### a. Plaintiff's *Prima Facie* Burden

Plaintiff's Complaint, on its face, makes a sufficient *prima facie* showing that her wage-based cause of action arose from Defendant's "business" contacts with the State of Ohio. As set forth above, Plaintiff alleges that Defendant, whether as her "single" or "joint" employer, operated and managed "approximately fifteen" senior living communities in the State—including the Carriage Court facility where she worked—and that, by virtue of this operative authority, Defendant:

1. Hired Plaintiff and all other potential members of her putative FLSA class.
2. Controlled her employment and working conditions, including her meal break and overtime policies.
3. Required or permitted Plaintiff and the members of her putative FLSA class to "perform work that resulted in missed or interrupted meal breaks."
4. "Supervise[d] and control[led]" the work schedule, pay rate, and methods of compensating Plaintiff and the member of her putative FLSA class.
5. "Engaged in commerce" that ultimately contributed to Defendant's "annual gross volume of sales made or business done of not less than $500,000 per year."

(ECF No. 46 at ¶¶ 12-14, 18-19, 21, 28.)

These allegations easily satisfy her requirement to "reasonably articulate" that Defendant directly "initiated" and routinely controlled Plaintiff's employment, working conditions, and pay rate within the State of Ohio, and that this control gave rise to her lack of overtime pay. In other words, it is enough to satisfy the relevant criteria of the Ohio long-arm statute. *See North Am. Software, Inc. v. James I. Black & Co.*, 11th Dist. Hamilton No. 2011-Ohio-3376, ¶ 15 (setting

forth the various factors that courts consider when determining a non-resident defendant's "substantial connection" to the State, including their initiation of, and participation in, business negotiations in Ohio, as well as ordering work to be done and/or remitting payments in Ohio). Accordingly, the burden now shifts to Defendant to demonstrate that personal jurisdiction does not exist. *See Malone*, 965 F.3d at 504 (citation omitted).

### b. Defendant's Supporting Affidavits

To properly rebut Plaintiff's *prima facie* showing, Defendant must demonstrate, using proper evidence, that "all of the specific facts" Plaintiff alleges "collectively fail[] to state a *prima facie case* for jurisdiction under the appropriate standards." *Malone*, 965 F.3d at 504; *Theunissen*, 935 F.2d at 1459. To that end, Defendant's Motion to Dismiss includes the sworn declarations of (1) Stephanie Harris, the Chief Executive Officer of Defendant's parent company, Turnaround Solutions (the "Harris Affidivat"); (2) Amanda Tweten, Defendant's Chief Operational Officer (the "Tweten Affidavit"); and (3) Kevin Banks, Arrow Hilliard's Business Office Director (the "Banks Affidavit"). (Def's Ex.'s A-C, ECF No. 49-1.)

Drawing on its affiants' testimony, Defendant's central contention is that all of the senior living communities at the center of Plaintiff's Complaint are independently operated and managed by "SPEs." (ECF No. 49 at PageID #523.) This includes Arrow Hilliard, the alleged operator of the Carriage Court facility. (*Id.*) As noted, Defendant states that, at all relevant times, it has solely functioned as the "corporate operations entity" of Turnaround Solutions, and that, in this capacity, it merely provides "accounting, bookkeeping[,] quality assurance[,] and regional operational support for the licensed administrator" of each SPE. (ECF No. 49 at PageID #525.) It further states that each SPE is "separate and functionally distinct legal entit[y]" that is "financially independent from one another, from Turnaround Solutions, and from [Defendant]." (*Id.* at PageID

#527, 536.) This assertion is supported by the Harris, Tweten, and Banks Affidavits, which all suggest that the SPEs Defendant affiliates with (including Arrow Hilliard):

1. Are the subsidiaries of Turnaround Solutions—not of Defendant (Harris Aff. at ¶ 5; Banks Aff. at ¶ 5);

2. Maintain their own self-funded payrolls (Banks Aff. at ¶ 8);

3. Maintain their own bank accounts, which are free from Defendant's ownership interest (Harris Aff. at ¶ 8; Banks Aff. at ¶ 8);

4. Employ their own "licensed administrators" and "management employees," including human resource managers who "supervise the day-to-day work" of all non-exempt employees (*see, e.g.*, Harris Aff. at ¶ 8);

5. Record and maintain their employee's "work hours" and pay their wages (*see, e.g.*, Harris Aff. at ¶ 8); and

6. Maintain "management agreements" with their own respective "owner/operator/landlord entity," all of which provide, inter alia, that the SPE is responsible for "[a]ll matters pertaining to the employment, supervision, compensation, promotion and discharge" of its employees (Harris Aff. at ¶ 10.)

Defendant acknowledges that its "bookkeeping" services touch upon each SPE's payroll, but that, even then, its sole responsibility is to pay each SPE's "expenses" from various bank accounts that it does not fund or own. (Harris Aff. at ¶ 10; Tweten Aff. at ¶ 5.) To that end, Defendant argues that Plaintiff's "cause of action—the failure to pay overtime wages—cannot possibly arise" from its transacting business in Ohio, as it did not "pay wages to—or fund the wages of—Plaintiff or any o[f] the opt-in plaintiffs" who have filed consent forms. (ECF No. 49 at PageID #529.)

As noted, at this stage, district courts do not "weigh the controverting assertions of the party seeking dismissal," but *do* consider their "undisputed" factual allegations. *Theunissen*, 935 F.2d at 1459; *Zakharov*, 667 F.3d at 711. Acknowledging this, Defendant argues that none of the assertions listed above are disputed by Plaintiff, and, thus, that the Court "can and should" accept all of Defendant's evidence to determine the jurisdictional inquiry at hand. (ECF No. 62 at PageID

10

#708.) It will not. That is because Plaintiff *does* dispute most of Defendant's factual assertions. Again, Plaintiff alleges, inter alia, that Defendant:

1. Constitutes the "parent company" (or, alternatively, "joint employer") of every senior living community that it affiliates with across the Midwest. (ECF No. 46 at ¶ 11.)

2. Paid (*i.e.*, funded) Plaintiff's wages "through" a separately registered entity. (*Id.* at ¶ 5.)

3. Controlled Plaintiff's hiring, employment terms, working conditions, and wage rate in a manner that ultimately deprived her of certain overtime compensation. (*See id.* at ¶¶ 11, 22-23, 75.)

Those allegations directly conflict with Defendant's principal contentions—namely, that (1) the Carriage Court facility (and every other Ohio-based, Defendant-affiliated senior living community) is actually operated and managed by independent SPEs and (2) those SPEs independently fund the wages of their non-exempt, hourly employees. These "contravening assertions" cannot be considered. *Theunissen*, 935 F.2d at 1459 (noting that the Sixth Circuit's rule against weighing "the controverting assertions of the party seeking dismissal" is meant "to prevent non-resident defendants from regularly avoiding personal jurisdiction simply by filing an affidavit denying all jurisdictional facts"); *see also Malone*, 965 F.3d at 504 (holding that the defendant's contravening affidavit was "irrelevant").

To be sure, some of the assertions that Defendant relies upon can be construed as non-contradictory. Those, however, fail to move the jurisdictional needle in any meaningful way. Take, for instance, Ms. Harris' declaration that each SPE "coordinate[s]" and "approve[s]" the compensation of the hourly, non-exempt employees of the Ohio-based facilities that Defendant affiliates with. (Harris Aff. ¶ 9.) That contention, even if true, does not adequately explain *how* those employees' wages are calculated nor *what entity* is responsible for setting their pay rate. Arrow Hilliard's "coordination" of its employees' compensation, for example, could merely require it to record their work hours and apply a pre-determined wage rate set by Defendant.

11

Indeed, one might even expect that to be the case given Defendant's own allegation that it functions as the "corporate operations entity" of Arrow Hilliard's parent company, Turnaround Solutions—which, notably, *does* provide "management" services for "senior assisted living communities throughout the United States[.]"[1] (ECF No. 49 at PageID #537; Harris Aff. at ¶ 3.)

Defendant additionally argues that Plaintiff's allegation of "joint employment" is not sufficient by itself to demonstrate the existence of personal jurisdiction, and, accordingly, that "[p]ersonal jurisdiction cannot be established by the corporate affiliation between [Defendant] and any of the SPEs" because Plaintiff cannot prove that Defendant is the "alter ego" of those SPEs. (ECF No. 49 at PageID #534-36.) Both of these arguments, however, ignore the *substance* of Plaintiff's "joint employment" allegation—that is, that Defendant's "sheer level of regular, managerial control" over her employment allowed it to directly determine her pay rate and working conditions. (*See* ECF Nos. 46 at ECF No. 46 at ¶¶ 11, 13, 21-22, 23; 60 at PageID #666.) Plaintiff's "joint employment" allegation merely states that Defendant maintained this control *regardless* of whether it constitutes the formal "parent company" of Arrow Hilliard (or any of the other SPEs at the center of her Complaint). (*Id.*) If Plaintiff argued that personal jurisdiction existed solely because of Defendant's status as her "joint employer" (and not because it had any specific business contacts with the State of Ohio), then Defendant's arguments might have weight. *See Estate of Thomson ex rel. Estate of Rakestraw v. Toyota Motor Corp. Worldwide*, 545 F.3d 357, 362 (6th Cir. 2008) (noting that the "alter ego" analysis only applies to defendants who "would not ordinarily be subject to personal jurisdiction" in the relevant forum); *Baughman v.*

---

[1] Defendant's partial description of the "operational support" services that it provides SPEs likewise does not shed light on its full scope of involvement (or lack thereof) in the compensation of SPE employees. (*See* ECF No. 49 at PageID #537-38; Harris Aff. at ¶¶ 8-10; Banks Aff. at ¶ 7; Tweten Aff. ¶¶ 5-7.)

*KTH Parts Industries, Inc.*, No. 3:19-cv-8, 2020 WL 1853207, at *4 (S.D. Ohio Apr. 13, 2020) (citation omitted). That, however, is not the case here.

Accordingly, Defendant has failed to "shift" the jurisdictional burden of proof back to Plaintiff. *See Malone*, 965 F.3d at 505 (citation omitted). Indeed, even if Defendant had prevailed in that endeavor, Plaintiff's own written submissions, construed favorably, would be enough to carry the day.[2] Thus, regardless of which way the jurisdictional burden falls, Plaintiff has sufficiently demonstrated that (1) Defendant "transacted business" in the State of Ohio by hiring her, setting her employment terms, and dictating her wages as a Carriage Court facility employee, and (2) that this "transaction" of business was a "proximate cause" of her wage-based cause of action. Ohio. Rev. Code § 2307.382(A)(1); *see Malone,* 965 F.3d at 504 (quoting *Theunissen*, 935 F.2d at 1458)).

### 2. Due Process

Having determined that Defendant's alleged contacts with the Ohio bring it within the ambit of the State's long-arm statute, the Court must now determine if the statute's "application to the facts of the case" would accord with the Due Process Clause of the Fourteenth Amendment. *See, e.g., Baughman*, 2020 WL 1853207, at *4 (citation omitted). The parties direct their arguments toward "specific" personal jurisdiction.

---

[2] These include, inter alia, (1) seven sworn declarations from individuals who state they were employed by Defendant in Ohio, and that, during their employment, they were aware that Defendant (a) "had a companywide policy of deducting 30 minutes from its employees' daily hours worked for a meal break," and (b) that this deduction was made "regardless of whether or not its hourly employees were able to take an interrupted break," (Pl.'s Ex.'s B-H, ECF Nos. 47-2, 47-3, 47-4, 47-5, 47-6, 47-7, 47-8); (2) two sworn declarations which demonstrate that Defendant paid its alleged non-exempt, hourly Ohio employees one-and-one-half-times their "base hourly rate of pay," as opposed to their "actual regular rate of pay," (Pl.'s Ex.'s B & E, ECF Nos. 47-2, 47-5); and (3) two sworn declarations which demonstrate that at least two Ohio-based, Arrow-affiliated senior living communities provided new hires with identical "Arrow Senior Management" employee handbooks that described the "terms and conditions" of their employment. (*Id.*)

To exercise "specific" personal jurisdiction over an out-of-state defendant, a court must satisfy itself that the defendant has had such "minimum contacts with the forum State such that he should reasonably anticipate being haled into court there." *Schneider*, 669 F.3d at 701 (quoting *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291, 297 (1980)). Such "minimum contacts" exist when the plaintiff's claims arise from or relate to a defendant's contacts with the forum state. *Intera Corp. v. Henderson*, 428 F.3d 605, 615 (6th Cir. 2005). The Sixth Circuit has identified three relevant criteria for this "minimum contacts" analysis: (1) that the defendant "purposefully availed" itself to the "privilege of acting in the forum state or causing a consequence" in that state; (2) that the plaintiff's cause of action "arise[s] from" the defendant's activities within the state; and (3) that the defendant's activity manifests a "substantial enough connection" to the state that renders "the exercise of jurisdiction over the defendant reasonable*." Means v. United States Conference of Catholic Bishops*, 836 F.3d 643, 649 (6th Cir. 2016) (quoting *Southern Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968) (hereinafter "*Southern Machine*")).

While the *Southern Machine* test may not be identical in nature to the Court's foregoing long-arm analysis, it is, at the very least, analogous. *See Cole*, 133 F.3d at 436 (finding that, notwithstanding the Ohio Supreme Court's determination that Ohio Rev. Code § 2307.382(A)(1) "does not reach the to the limits of the Due Process Clause," the court's "central inquiry" was whether the lower court's exercise of personal jurisdiction comported with "traditional" due-process principles). To that end, the Court's findings in the preceding subsection are largely instructive.

### a. Purposeful Availment

To demonstrate that Defendant "purposefully availed" itself to the State of Ohio, Plaintiff must make a *prima facie* showing that Defendant's "contacts" with Ohio proximately resulted

14

from its own actions, and that those contacts created a "substantial connection" with the State. *See Means*, 836 F.3d at 649 (citation omitted). Plaintiff has met this burden through its contention that Defendant, at all relevant times, "singularly" or "jointly" managed the employees of "approximately fifteen" Ohio-based senior living facilities. (*See* ECF No. 46 at ¶¶ 9, 11, 21-23.) She has alleged, in other words, that Defendant reached into Ohio by managing those senior living communities and dictating the wage rate and working conditions of their hourly, non-exempt employees. In that vein, Plaintiff has met her *prima facie* burden to demonstrate that Defendant manifested a "substantial connection" with the State of Ohio that could ultimately cause it to be "haled into" an Ohio court. *See Neogen Corp.*, 282 F.3d at 889 (citation omitted).

### b. "Arises From" Criteria

Plaintiff has likewise met the second prong of *Southern Machine*. That is, she has sufficiently demonstrated that her cause of action—her loss of overtime compensation—"arose from" Defendant's determination of her wage rate and employment conditions. (*See* ECF No. 46 at ¶¶ 9, 11, 21-24, 33-54.) To rebut this *prima facie* showing, Defendant reiterates that, because "it does not fund the wages of the non-exempt employees at issue in this case," Plaintiff has not and cannot demonstrate that her cause of action "arises from or relates to" Defendant's contacts with the State of Ohio. (ECF No. 60 at PageID #531-33.) But, as discussed above, that contention cannot be considered. *See supra*, Part II.C.1.b. Moreover, even if that assertion was so considered, it would have little impact on Plaintiff's additional allegation that Defendant controlled her *pay rate*. (*See* ECF No. 46 at ¶¶ 10-11, 13, 17, 21.)

### c. "Substantial Connection" and "Reasonableness"

Finally, Plaintiff has sufficiently demonstrated that this Court's exercise of personal jurisdiction over Defendant would be "reasonable." *See Means*, 836 F.3d at 649 (citation omitted). This is partially due to Plaintiff's satisfaction of the first two prongs of *Southern Machine*. *See*

*Compuserve, Inc. v. Patterson*, 89 F.3d 1257, 1268 (6th Cir. 1996) (noting that, once a plaintiff demonstrates that his or her cause of action "arose from" the defendant's "purposeful" contacts with the forum state, "an inference arises that [the] third factor is also present) (citations omitted). Nevertheless, the Court must also consider several additional factors, "including 'the burden on the defendant, the interest of the forum state, the plaintiff's interest in obtaining relief, and the interest of other states in securing the most efficient resolution of controversies.'" *Id.* (quoting *Am. Greetings Corp. v. Cohn*, 839 F.2d 1164, 1169-70 (6th Cir. 1988)).

First, the Defendant's burden. Generally, this factor seeks to determine whether the "court's exercise of personal jurisdiction over a nonresident defendant" would render that defendant's ability to litigate "so gravely difficult and inconvenient" that it would be at a "severe" and "unfair" disadvantage. *See* 21 C.J.S. *Courts* § 48. Here, Defendant, a Missouri-based limited liability company, would certainly bear some cost- and convenience-related burden if required to litigate Plaintiff's claims in Ohio. That, however, does not mitigate Plaintiff's allegation that Defendant purposefully reached into Ohio (thereby taking advantage of its laws and its people) by managing and operating "approximately fifteen" businesses within the State. (*See* ECF No. 46 at ¶ 15.) Defendant, as discussed, reasonably should have expected that this business activity could cause it to be "haled" into an Ohio court. *Compuserve*, 89 F.3d at 1264. This is especially so given that, on a relative scale, Ohio appears to have the highest concentration of Defendant-affiliated senior living facilities. (*See* ECF No. 60 at PageID #674; Harris Aff. at ¶ 5.) Accordingly, the Court is satisfied that Defendant would not be so burdened as to be at a "severe" and "unfair" disadvantage if it was forced to litigate in this forum.

The second and third factors likewise suggest that this Court could "reasonably" exercise personal jurisdiction over Defendant. As Plaintiff points out, Defendant's concentration of services

in Ohio suggests that it is "unlikely that any state will have more of Defendant's healthcare employees affected by the pay practices at issue than Ohio." (ECF No. 61 at PageID #693.) And, assuredly, Ohio has a particular social and economic interest in providing those who work within its bounds a forum to recover lost pay. This interest is magnified by the fact that Defendant's alleged violation of Ohio's own wage and hour laws—*i.e.*, the OMFWSA and OPPA—are at issue. (*See* ECF No. 46.)

Accordingly, any burden Defendant faces by having to litigate this case in Ohio is outweighed by "Ohio's interest in business being conducted fairly and legally within its borders and [Named] Plaintiff's interest in pursuing relief for [her] alleged damages in [Ohio]." *Ault Int'l Med. Mgmt., LLC v. City of Sevierville*, No. 2:19-cv-02739, 2020 WL 1244190, at *3 (S.D. Ohio Mar. 16, 2020) (citing *Kendle v. Whig Enters., LLC*, No. 2:15-cv-1295, 2016 WL 5661680, at *8 (S.D. Ohio Sept. 30, 2016)). So too is it overcome by Plaintiff's clear interest in obtaining convenient and effective relief in the State of Ohio, which is where she lives, where she was employed by Defendant, and where Defendant's alleged violations of the federal and state wage and hour laws occurred. *See Koster v. Am. Lumermen's Mut. Cas. Co.*, 330 U.S. 518, 524 (1947) (noting a plaintiff's "presumed advantage" of being able to litigate in his or her "home forum"). In their totality, Plaintiff and Ohio's joint interest in having an Ohio court exercise jurisdiction over Defendant outweigh the interest of any other state (namely, Missouri) in doing the same.

Accordingly, Defendant's Motion to Dismiss for Lack of Personal Jurisdiction is **DENIED**. (ECF No. 49.)

### III.   DEFENDANT'S MOTION TO TRANSFER VENUE

Defendant asks this Court to transfer the instant case to the Eastern District of Missouri on two separate bases.  (ECF No. 50.)  First, it asserts that transfer is required under 28 U.S.C. §§ 1406(a), 1631 because, as set forth in its Motion to Dismiss, the Court lacks personal jurisdiction. (*Id.* at PageID #561.)  Alternatively, it moves this Court to discretionarily transfer this action to Missouri for efficiency purposes under 28 U.S.C. § 1404(a).  (*Id.* at PageID #562-67.)  Neither argument is persuasive. Plaintiff's case will remain in this District.

### A.   Standards of Review

### 1.   Improper Venue Under 28 U.S.C. §§ 1406(a) and 1631

When venue is improper in the original forum, § 1406(a) enables a district court, in lieu of dismissal, to transfer venue "if it be in the interest of justice . . .  to any district or division in which it could have been brought." *Id.* A similar provision in § 1631 authorizes a district court to transfer a case to an appropriate district, "in the interest of justice," when the court finds "a want of jurisdiction."  *Stanifer v. Brannan*, 564 F.3d 455, 456-457 (6th Cir. 2009).

"There is a split of authority among district courts in the Sixth Circuit regarding who bears the burden of proof when venue is challenged as improper." *Reilly v. Meffe*, 6 F. Supp. 3d 760, 765 (S.D. Ohio 2014). Nevertheless, "[r]egardless of who bears the burden of proof, under Rule 12(b)(3), a plaintiff's well-pled allegations pertaining to venue issue[s] are taken as true, unless contradicted by a defendant's affidavits." *Id.* Moreover, "[i]n resolving venue questions, courts 'may examine facts outside the complaint but must draw all reasonable inferences and resolve factual conflicts in favor of the plaintiff.'" *Id.* (quoting *Audi AG & Volkwagen of Am. v. Izumi*, 204 F. Supp. 2d 1014, 1017 (E.D. Mich. 2002)).

### 2.  Discretionary Transfer Under 28 U.S.C. § 1404

Even when venue is proper, 28 U.S.C. § 1404 empowers courts to transfer an action to another court "where it might have been brought" if, in its discretion, it finds that transfer would ultimately favor "the convenience of parties and witnesses [and] the interest of justice." This provision "codifies the common law *forum non conveniens* doctrine," which, as applied, is entirely fact-based. *DISC Env't. Servs., Inc. v. Usher Oil Co.*, 343 F. Supp. 705, 709 (N.D. Ohio 2018) (citations omitted). To that end, a standard § 1404(a) analysis hinges on an "individualized, case-by-case consideration of convenience and fairness" which seeks to determine whether, based on various private and public interests, litigating the plaintiff's action in her chosen forum would be "unnecessarily burdensome." *Stewart Org., Inc. v. Ricoh Corp*., 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)); *Hefferan v. Ethicon Endo-Surgery Inc.*, 828 F.3d 488, 492 (6th Cir. 2016). Throughout the analysis, "the onus of showing that a plaintiff's choice of forum is unnecessarily burdensome falls on the defendant." *See Sacklow v. Saks Inc.*, 377 F. Supp. 3d 870, 876 (M.D. Tenn. 2019) (quoting *Hefferan*, 828 F.3d at 498). "Unless the balance is strongly in favor of defendant, a plaintiff's choice of forum should rarely be disturbed." *Id.* (citing *Reese v. CNH Am. LLC*, 574 F.3d 315, 320 (6th Cir. 2009)).

### B.  Analysis

### 1.  28 U.S.C. §§ 1406(a) and 1631

Defendant argues that Plaintiff's chosen venue is improper—and, thus, that transfer is warranted under § 1406(a) and § 1631—because the Court lacks personal jurisdiction.  (*See* ECF No. 50 at PageID #561.)  The Court has already determined that is not the case. Thus, Defendant's improper venue argument is not well taken.[3]

---

[3] To be sure, the Court's foregoing analysis is enough to satisfy it that Plaintiff's chosen venue qualifies under 28 § U.S.C. 1391(b)(2), which allows "[a] civil action to be brought in . . . a judicial district in which a substantial part of

### 2.    28 U.S.C. §§ 1404(a)

Defendant argues in the alternative that, even if "the Court were to find that it has jurisdiction over Arrow," the Court should, in its discretion, transfer the instant case to the Eastern District of Missouri under § 1404(a) so that it may be consolidated with the Missouri Case.  (ECF Nos. 50, 63, 64.) To do so, it contends, would "promote judicial efficiency . . . [and] avoid duplication, wasted resources, the risk of inconsistent decisions and unnecessary expense."  (ECF No. 50 at PageID #557.)    Defendant also argues that transfer would come to the overall "convenience" of the parties and witnesses.  (*Id.* at PageID #564-65.)

Plaintiff counters that the Court's deference to her choice of forum dispositively warrants against transfer.  (ECF No. 61 at PageID #688.)  She maintains that transfer of the instant action to the Eastern District of Missouri would "merely shift[] the burden of inconvenience" from Defendant and its witnesses to Plaintiff and her co-parties, which is an improper reason for transfer. (*Id.*) (quoting *Kuvedina, LLC v. Cognizant Tech. Sols.*, 946 F. Supp. 2d 749, 761 (S.D. Ohio May 21, 2013)). She also points to the fact that *Canaday*—the genesis of the Missouri Case—acknowledged that it would generate the type of "piecemeal litigation" that Defendant now points to as a basis for transfer.  (*Id.* at PageID #695) (*citing Canaday*, 9 F.4th at 400-01). To grant Defendant's request, Plaintiff asserts, would contradict that acknowledgment and contravene the "broad remedial purpose and intent of the FLSA" because it would suggest that FLSA plaintiffs located in this circuit, would, practically speaking, be *required* to bring a collective action in the "home" jurisdiction of any out-of-state, multi-regional corporate defendant.  (*Id.* at PageID #699-702.)

---

the events or omissions giving right to claim occurred, or a substantial part of property that is the subject of the action is situated."

The Court recognizes the various efficiency interests that Defendant cites as the basis for its § 1404(a) motion. Ultimately, however, it finds that those interests do not warrant transfer of this case. *Canaday*, as Plaintiff notes, does not—and cannot—stand for the principle that an FLSA collective action "can only be filed" in a defendant's "home" jurisdiction when that defendant operates in multiple jurisdictions. The Court agrees with Plaintiff that transfer here would, in essence, mean otherwise. Thus, the Court declines to transfer this case under § 1404(a).

### 1. Private-Interest Factors

In conducting § 1404(a) analyses, courts, as noted, consider numerous public- and private-interest factors. Generally, the private factors considered include (1) the plaintiff's choice of forum; (2) where the parties reside; (3) the "location of willing and unwilling witnesses[;]" (4) the location of evidence; and (5) the locus of events that "gave rise to the dispute." *Sacklow*, 377 F. Supp. 3d. at 877 (citations omitted).

#### a. Plaintiff's Choice of Forum

Generally, when courts conduct § 1404(a) analyses, they "must give foremost consideration to the plaintiff's choice of forum." *Worthington Indus., Inc. v. Inland Kenworth (US), Inc.*, No. 2:19-cv-3348, 2020 WL 1309053, at *2 (S.D. Ohio March 18, 2020) (quoting *W. & S. Life Ins. Co. v. Morgan Stanley Mortg. Cap., Inc.*, No. 1:11-cv-576, 2011 WL 6372845, at *4 (S.D. Ohio Dec. 20, 2011)). Defendant acknowledges this, but argues that "where, as here, a plaintiff seeks to certify a nationwide class, the importance of a plaintiff's choice of forum in discounted." (ECF No. 50 at PageID #564) (citing, inter alia, *Sabol v. Ford Motor Co.*, No. 2:14-cv-543, 2014 WL 6603358, at *5 (S.D. Ohio Nov. 19, 2014)). Plaintiff, however, plainly does *not*

seek to certify a nationwide class.[4] Her putative FLSA collective (and putative Rule 23 class) are explicitly cabined to Ohio workers—who, given the concentration of Defendant's Ohio-based senior living facilities, are, on a relative basis, likely to be large in number. (*See* Harris Aff. at ¶ 5.) It is also, as noted, based in the State where Plaintiff lives, where Plaintiff worked allegedly worked for Defendant, and where Defendant allegedly caused her injuries. (ECF Nos. 46, 61, 66.)

Accordingly, this factor strongly weighs against transfer.

**b. Residence and Convenience of the Parties and Witnesses; Costs to Obtain Witnesses**

Defendant argues that "transfer of the instant action to the Eastern District of Missouri will serve dual purposes of preventing witnesses from traveling hundreds of miles for depositions or trial" because Plaintiff's central allegation—that Defendant maintained "company-wide" pay policies which violated the FLSA—will invariably require testimony of Defendant's CEO, COO and CFO, all of whom are based in Missouri. (ECF No. 50 at PageID #565.) It further asserts that litigating this case in Missouri would be "no less convenient than [litigating it in] Ohio" because "prior to Plaintiff's filing of the Third Amended Complaint," Plaintiff sought to assert a nationwide class that would have invariably required out-of-state parties to travel. (*Id.*)

This argument falls short for several reasons. For one, it again appears to disregard the fact that Plaintiff *currently* only brings Ohio-based claims. Forcing Plaintiff to litigate those claims in Missouri, rather than here, would certainly be less "convenient" for her and her co-parties, who would be forced to bear the expense of traveling to "a district court that sits over four hundred (400) miles away." (ECF No. 61 at PageID #693.) In other words, transfer would merely "shift"

---

[4] Defendant repeatedly refers to Plaintiff as if she were a party to the Missouri Case. (*See* ECF No. 63 at PageID #719, 723, 727.) She is not. Her counsel may be involved in both cases, but that has no bearing on *Plaintiff's* choice of forum.

this action to forum that would, at the very least, be "equally . . . inconvenient" for Plaintiff and her co-parties. *See Kuvedina*, 946 F.Supp.2d at 761. That is not the aim of § 1404(a). *See id.*

Defendant also short-shrifts the fact that Plaintiff—regardless of forum—will almost certainly require non-party, Ohio-based witnesses to prove that Defendant violated the FLSA *in Ohio*. Defendant, likewise, will require the testimony of those witnesses' Ohio-based superiors to push back on that notion.[5] All of those witnesses will bear a much greater burden than they otherwise would if this Court required them to travel to Missouri. And that fact alone significantly weighs against transfer. *See Brown v. PCSU, Inc.*, No. 20-11510, 2020 WL 7122075, at *3 (E.D. Mich. Dec. 4, 2020) ("Witnesses' convenience is one of the most important factors in determining whether to grant a motion to change venue under § 1404(a)."); *B.E. Tech., LLC v. Google, Inc.*, 2013 WL 2297086, *7 (W.D. Tenn. 2013) ("[I]t is the convenience of non-party witnesses, rather than employee witnesses ... that is the more important factor and is accorded greater weight.").

Accordingly, these factors weigh against transfer.

### c. Location of Evidence and of the Events Giving Rise to the Dispute

Defendant argues that "because 'the crux of Plaintiffs' putative collective action is that [it] 'engaged in a company-wide policy, pattern, or practice of violating the FLSA,'" its Missouri-based headquarters constitutes "the center of gravity of Plaintiffs' claims." (ECF No. 63 at PageID #726) (quoting *Hardney v. ABC Phones of North Carolina, Inc.*, No. 3:19-cv-12722-BRM-ZNQ, 2020 WL 948817 (D.N.J. Feb. 27, 2020)). Plaintiff, in response, contends that the true "locus of operative facts" of the instant action "is unequivocally Ohio," given that is where she and her co-parties were actually subjected to illegal treatment, as well as where their injuries accrued. (ECF No. 61 at PageID #699) (citation omitted).

---

[5] Defendant has suggested as much by using the testimony of Arrow Hilliard's Business Office Director to contradict Plaintiff's allegations. (*See* Banks. Aff. at ¶ 2.)

Defendant does not argue that key evidence would be any less accessible in this forum than it would be if this case were litigated in Missouri. Indeed, it acknowledges that "[i]n light of technological advances, the importance of this factor has somewhat diminished." (*See* ECF No. 50 at PageID #563 n. 5) (citing *See Banerjee v. University of Tennessee*, No. 3:17-cv-00004, 2017 WL 11482340, at *2 (M.D. Tenn. Nov. 30, 2017) and *Verizon Employee Benefits Committee v. Frawley*, No. 3:05-CV-2105-P, 2006 WL 8437662, at *2 (N.D. Tex. March 21, 2006)).

Defendant's "location of events" argument is, accordingly, unpersuasive. It is true that Plaintiff's central contention is that Defendant's maintained a "companywide" pay policy that violated the FLSA. (*See* ECF No. 46.) The entirety of her Complaint, however, is *exclusively* centered on (1) the implementation of that policy *across Ohio* and (2) the injuries it manifested amongst Defendant's Ohio-based workers. (*See id.*) In other words, Plaintiff's claims will rest or fall on her ability to prove that Defendant injured her and her co-parties in this State and forum. Defendant's reliance on an out-of-circuit case—which, unlike here, involved a nationwide FLSA collective—does not mitigate the importance of that fact. *See Hardney*, 2020 WL 948817, at *1.

Accordingly, these factors are, at most, of neutral weight.

## 2. Public-Interest Factors

Public-interest factors, "[a]lthough more amorphous" than those in the private-interest category, generally fall within § 1404(a)'s "interests of justice" prong. *See Moore*, 446 F.3d at 647 n.1. Factors considered under this prong include (1) the court's interest in judicial economy; (2) docket congestion; (3) local interest in deciding the controversy at home, and (4) in diversity cases, the interest of conducting the trial in the forum of the governing law. *Youngblood v. Life Ins. Co. of N. Am.*, No. 3:16-CV-34-TBR, 2016 WL 1466559, *1 (W.D. Ky. Apr. 14, 2016) (citing *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49 (2013)). Underpinning this

analysis is the public's general interest in "systemic integrity and fairness." *See Stewart*, 487 U.S. at 30; *Moore*, 446 F.3d at 647 n.1.

### a. Judicial Economy

Defendant relies most heavily on the Court's interest in avoiding "piecemeal litigation" to support its § 1404(a) argument. (ECF Nos. 50 at PageID #561-62; 63 at PageID #721-23.)  It asserts, in sum, that there is "no advantage . . . in the prosecution of two closely related parallel proceedings in two different courthouses," given the duplicative proceedings and corresponding risk of inconsistent results that it would entail. (ECF No. 50 at PageID #561) (quoting *Krawec v. Allegany Co-Op Insurance Co.*, No. 1:08-CV-2124, 2009 WL 1974413, at *6 (N.D. Ohio July 7, 2009)). It further points to numerous cases—including those decided by this Court—where such concerns dispositively warranted in favor of transfer.  (*See id.* at PageID #561-62) (citing, inter alia, *Flatt v. Aspen Dental Mgmt., Inc., et al.*, No. 2:18-cv-1278, 2019 WL 6044159, at *8 (S.D. Ohio Nov. 15, 2019); *Barnes Grp., Inc. v. Midwest Motor Supply Co., Inc., et al.,* No. 2:07-cv-1164, 2008 WL 509193, *3 (S.D. Ohio Feb. 22, 2008); *Stewart v. Chesapeake Exploration, LLC*, No. 2:12-cv-270, 2012 WL 3151255, at *4 (S.D. Ohio Aug. 2, 2012)).

Those cases, however, either did not involve an FLSA collective action or came before *Canaday*'s issue. In other words, they did not take place in a universe where transfer would manifest quite the same consequences as it would likely have here.

When Plaintiff initially filed the instant action, she sought to avoid the inefficiencies that Defendant now cites as a basis for transfer. She specifically chose to assert a "nationwide" FLSA collective action against Defendant in Ohio.  (ECF No. 1.)  Pursuant to *Canaday*, Plaintiff narrowed her collective action to exclusively gravitate around injuries that arose from Defendant's alleged conduct in Ohio. (ECF Nos. 44, 46); *see Canaday*, 9 F.4th at 397. That is, she asserted a "state-based" collective action. *Canaday*, 9 F. 4th at 401. Then, a different group of nonresident

FLSA plaintiffs filed the Missouri Case in Defendant's "home" jurisdiction. *See Roberts*, Case No. 4:21-cv-01370-HEA.

Defendant, at base, argues that the existence of the latter case means that the former should be transferred. This Court disagrees. To hold otherwise would essentially mean that Plaintiff's ability to litigate her state-based collective action was contingent on the choice of other, nonresident plaintiffs to file suit somewhere else. And that, effectively, would mean that Plaintiff had no real "choice" to proceed in her "home" forum at all.

In the wake of *Canaday*, this Court (and its sister courts in this circuit) are likely to encounter similar factual scenarios. More FLSA plaintiffs, for any number of legitimate reasons, will likely choose to file state-based collective actions in their "home" forums rather than litigate in a foreign state. And those actions may very well invite *other*, nonresident FLSA plaintiffs to file parallel collective actions against the same defendant in different jurisdictions—including the defendant's "home" forum. *See Canaday*, 9 F. 4th at 415-16 (Donald, J., dissenting). If this Court were to grant dispositive weight to Defendant's efficiency concerns here, it would suggest that the same should occur then as well.

That, however, would be untenable. *Canaday* does not stand for the proposition that an FLSA plaintiff's ability to file a "state-based" collective action at "home" against a foreign defendant ends once that defendant is sued by someone else in a court of general jurisdiction. Granting transfer here would, in a practical sense, mean that it does. Such would undermine the *Canaday* court's seeming acknowledgement that its holding would cause parallel "state-based collective actions" to arise.[6] *See Canaday*, 9 F.4th at 397-398, 400-401 (highlighting the Supreme

---

[6] Both sides of the *Canaday* court—the majority and the dissent—evaluated the potential inefficiencies of "state-based collective actions" differently. The latter saw them as clearly problematic; the former did not. *See Canaday*, 9 F.4th at 400-01, 415-46. That difference in viewpoint, for present purposes, is immaterial. What matters is that the *Canaday* court contemplated that its holding could cause scenarios like the one facing this Court to arise.

Court of the United States' decision in *Bristol-Myers Squibb Co. v. Superior Ct.*, --- U.S. ----, 137 S.Ct. 1549, 198 L.Ed.2d 36 (2017) as a basis for its holding and acknowledging that "it is not obvious, at any rate, that state-based collective actions are necessarily inefficient"); *see also Canaday*, *supra* at 415-16 (Donald, J., dissenting). It would also, as discussed below, plainly cut against the FLSA's "broad remedial intent." *Kelley v. Miri Microsystems LLC*, 781 F.3d 799, 806 (6th Cir. 2015); *see also Powell v. U.S. Cartridge Co.,* 339 U.S. 497, 509-11 (1950) (noting that, in enacting the FLSA, "the primary purpose of Congress . . . was to eliminate, as rapidly as practicable, substandard labor conditions throughout the nation").

To be sure, Defendant is correct that *Canaday* does not directly "alter the Court's discretion" to transfer this case under § 1404(a). (*See* ECF No. 63 at PageID #723.) But that does not mean its residual effects are irrelevant. And, here, those effects, in addition to concerns of "systemic integrity and fairness," mean that the efficiency concerns Defendant points out do not dispositively weigh in favor of transfer. *See Stewart*, 487 U.S. at 30; *Moore*, 446 F.3d at 647 n.1.

### b. Docket Congestion

Defendant argues that "the public interest factor of docket congestion weighs heavily in favor of transfer to the Eastern District of Missouri." (ECF No. 50 at PageID #566) (citing *Kay v. National City Mortg. Co.*, 494 F. Supp. 2d 845, 857 (S.D. Ohio 2007)). It points out, specifically, that

> [a]s of March 31, 2020 (the most recent date reported), there were 9,492 civil cases pending in the Southern District of Ohio, which is comprised of eight judges (an average of 1,186 cases per judge) versus 1,998 in the Eastern District of Missouri, which is comprised of 14 judges (an average of 142 cases per judge). Consistent with this disparity in caseload, for the annual period ending June 30, 2021, the median time elapsed from the filing of a suit to final disposition for civil cases in this District was 10.2 months, whereas that figure in the Eastern District of Missouri was 8 months. This significant disparity in congestion between the transferor and the transferee court further supports transfer of this matter.

(ECF No. 50 at PageID #566-67.)

The disparity in caseload that Defendant cites arises from this Court's handling of one of the largest multidistrict litigation cases in the country: *In Re: Davol, Inc./C.R. Bard, Inc., Polypropylene Hernia Mesh Products Liability Litigation*, 2:18-md-2846. Thus, the statistics Defendant cites do little to support its position.

Accordingly, this factor is of neutral weight.

### c. Local Interest in Deciding Case; Interest of Conducting Trial in the Forum of the Governing Law

Defendant argues that "[c]ourts in this District have not hesitated to transfer lawsuits to other federal districts, where the courts can adjudicate state law claims with the primary, FLSA claims they accompany." (*See* ECF No. 63 at PageID #723.)  Accordingly, it argues that the fact Plaintiffs have brought claims under the OWMFSA and OPPA "does not weight against transfer of this case to the Eastern District of Missouri." (*Id.*)

Defendant's argument rests on the contention that the Eastern District of Missouri is just as equipped to adjudicate Plaintiff's claims as this one. (*Id.* at PageID #724.)  The Court, to be sure, does not doubt that. The fact remains, however, that Ohio has a keen interest in remedying the economic injuries of its workers—particularly those that arise from the violation of Ohio law. And that interest is most appropriately vindicated by adjudicating Plaintiff's claims in this District, given its intimate familiarity with the Ohio laws at issue.

Thus, these factors, on the whole, either slightly weigh against transfer or are of neutral weight.

### d. Systemic Integrity and Fairness

As our sister court in the Western District of Tennessee noted:

The FLSA is not a trivial statute to be 'interpreted or applied in a narrow, grudging manner." *Tennessee Coal, Iron & R. Co. v. Muscoda Local No. 123,* 321 U.S. 590,

597 (1944). When FLSA claims are brought before a court, that court must "discard[ ] formalities and adopt[ ] a realistic attitude, recognizing that we are dealing with human beings and with a statute that is intended to secure to them the fruits of their toil and exertion." *Id.* at 592; *see also id.* at 597 (the FLSA does not "deal with mere chattels or articles of trade but with the rights of those who toil, of those who sacrifice a full measure of their freedom and talents to the use and profit of others.").

The legislative history of the Fair Labor Standards Act shows an intent on the part of Congress to protect certain groups of the population from substandard wages and excessive hours which endangered the national health and well-being and the free flow of goods in interstate commerce.

The statute was a recognition of the fact that due to the unequal bargaining power as between employer and employee, certain segments of the population required federal compulsory legislation to prevent private contracts on their part which endangered national health and efficiency and as a result the free movement of goods in interstate commerce. *Brooklyn Sav. Bank v. O'Neil,* 324 U.S. 697, 706–07, 65 S.Ct. 895, 89 L.Ed. 1296 (1945) (footnote omitted).

*Steele v. Staffmark Investments, LLC,* 172 F. Supp. 3d 1024, 1026 (W.D. Tenn. 2016).

Here, the Court must grapple with the "realistic" effects of transfer. *Id.* As discussed, the conditions that underpin Defendant's § 1404(a) motion are likely to reoccur in the FLSA context. To that end, there is at least some validity to Plaintiff's argument that transferring this case on Defendant's grounds would "put[] into question whether an FLSA named plaintiff truly has the ability" to seek relief for her and her co-parties "relatively modest claims" in her home forum. (ECF No. 61 at PageID #694.) And that doubt, in turn, could "chill future plaintiffs' consideration of whether or not to bring" any FLSA action in the first place—undermining the system of relief that the FLSA seeks to provide. (*See id.*)

Accordingly, this factor weighs against transfer.

### 3. Transfer Is Not Warranted

In sum, the Court finds that the "balance" of relevant public- and private-interest factors do not "strongly" weigh in favor of transfer. *See Sacklow*, 377 F. Supp. 3d at 876 (M.D. Tenn.

2019) (citing *Reese*, 574 F.3d at 320). Accordingly, Defendant's Motion to Transfer is **DENIED**. (ECF No. 50.)

## IV.    CONCLUSION

Based on the foregoing, the Court **DENIES** Defendant's Motion to Dismiss (ECF No. 49) and Defendant's Motion to Transfer (ECF No. 50).

This case is to remain open on the docket of this Court.

**IT IS SO ORDERED**.


**2/17/2022**                                    **s/Edmund A. Sargus, Jr.**
**DATE**                                         **EDMUND A. SARGUS, JR.**
                                                 **UNITED STATES DISTRICT JUDGE**