IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| KENDALL OLIN-MARQUEZ, on behalf of herself and others similarly situated, | )<br>)<br>) Case No. 2:21-CV-00996 |
| Plaintiff, | )<br>) Judge Edmund A. Sargus |
| vs. | )<br>) Magistrate Judge Chelsey M. Vascura |
| ARROW SENIOR LIVING MANAGEMENT, LLC, | )<br>)<br>) |
| Defendant. | ) |

**JOINT MOTION FOR FINAL APPROVAL OF FLSA SETTLEMENT AND PRELIMINARY APPROVAL OF RULE 23 CLASS ACTION SETTLEMENT**

I. **INTRODUCTION**

Representative Plaintiffs Kendall Olin-Marquez, Deborah Roberts, and Jadan Cook ("Representative Plaintiffs") and Defendant Arrow Senior Living Management, LLC ("Defendant") (collectively, the "Parties") respectfully request that this Honorable Court:

1. Grant final approval of the Parties' settlement of the collective claims brought pursuant to the Fair Labor Standards Act ("FLSA") as reflected in the FLSA Collective Action and Rule 23 Class Action Settlement Agreement and Release (the "Agreement" or "Settlement"), attached hereto as **Exhibit 1**, and approve the distribution of the Notice of Settlement of Collective Action Lawsuit, attached hereto as **Exhibit 2**;

2. Grant preliminary approval of the Parties' settlement of the class action claims brought pursuant to Fed. R. Civ. P. 23(e) as reflected in Agreement, and approve the distribution of the Notice of Class Action Settlement, attached hereto as **Exhibit 3**;

3. Schedule a Fairness Hearing to take place approximately 90 days after granting preliminary approval of the Parties' class action settlement;

4. Designate Shannon M. Draher Nilges Draher LLC and Matthew J.P. Coffman of Coffman Legal, LLC as Class Counsel, and preliminarily approve their request for attorneys' fees and costs; and

5. Preliminarily Approve the service payments for Representative Plaintiffs;

In support of this Motion, the Parties submit the attached memorandum and the following documents:

**Exhibit 1**: FLSA Collective Action and Rule 23 Class Action Settlement Agreement and Release;

**Exhibit 2**: Notice of Settlement of Collective Action Lawsuit;

**Exhibit 3**: Notice of Class Action Settlement;

**Exhibit 4**: Declaration Matthew J.P. Coffman; and

**Exhibit 5**: Proposed Order Granting Joint Motion for Final Approval of FLSA Settlement and Preliminary Approval of Rule 23 Class Action Settlement.

## II. FACTS

### A. Factual and Procedural Background.

On March 10, 2021, Representative Plaintiff Kendall Olin-Marquez commenced a lawsuit against Defendant on behalf of herself and all others similarly situated to her asserting wage and hour claims under the Fair Labor Standards Act ("FLSA") and Ohio law (the "Ohio Action"). On November 21, 2021, Representative Plaintiffs Deborah Roberts and Jadan Cook commenced a lawsuit against Defendant on behalf of themselves and all others similarly situated to them asserting wage and hour claims under the FLSA and Missouri law (the "Missouri Action). (Coffman Decl. ¶ 15).

In the Ohio and Missouri Actions, Representative Plaintiffs alleged: (1) that Defendant failed to include certain nondiscretionary bonus payments in their regular rate of pay for purposes of computing their overtime compensation, which resulted in unpaid overtime compensation and (2) that Plaintiffs (which include the Representative Plaintiffs, the Opt-In Plaintiffs and the Rule

23 Class Members are those terms are defined in the Agreement) worked during their unpaid meal breaks, which resulted in unpaid overtime compensation. (Coffman Decl. ¶ 16).

The Parties agreed to conditionally certify the putative collective defined below in the Ohio Action and the Missouri Action pursuant to 29 U.S.C. § 216(b).

> All current and former hourly, non-exempt employees at any Arrow senior living community who (1) were paid for forty (40) or more work hours in any workweek they were required to have a meal break deduction taken from their compensable hours worked and/or (2) were paid for more than forty (40) hours work hours in any workweek that they received nondiscretionary bonus payments, such as a retention bonus (often called a "Sign On Bonus") or a shift pick-up bonus, for working extra shifts or hours beyond what the employee was scheduled to work from June 7, 2018 to the present.

(Coffman Decl. ¶ 17). Defendant has consistently denied any wrongdoing and has maintained that it paid its employees properly.

On February 10, 2022, the United States District Court for the Southern District of Ohio, Eastern Division, issued an Order granting conditional certification and approving notice and consent as proposed by the Parties. Thereafter, Plaintiffs' Counsel issued notice and consent forms to members of the putative collective action members above. Following the issuance of notice, 293 putative collective members returned a timely consent to join form. (Coffman Decl. ¶ 18).

On January 26, 2022, the United States District Court for the Eastern District of Missouri, Eastern Division issued an Order granting conditional certification and approving notice and consent as proposed by the parties. Thereafter, Plaintiffs' Counsel issued notice and consent forms to members of the putative collective members defined above. Following the issuance of notice, 293 putative collective members returned a timely consent to join form. (Coffman Decl. ¶ 19).

To avoid the burden, expense, risks and uncertainty of litigation, the Parties agreed to engage in mediation with a third-party neutral. Plaintiffs' Counsel engaged the services of an analyst to construct a damages model using information produced by Defendant. The Parties mediated this case with Jason Brisol on two separate occasions – September 29, 2021, and July 28, 2022. The Parties reached an agreement at the July 28, 2022, mediation. (Coffman Decl. ¶ 20).[1]

On August 2, 2022, the Parties jointly moved the United States District Court for the Eastern District of Missouri, Eastern Division to transfer the Missouri Action to Ohio. On September 12, 2022, the Parties filed a joint motion to consolidate the Ohio Action and the Missouri Action for purposes of settlement. On September 15, 2022, the United States District Court for the Southern District of Ohio granted the joint motion to consolidate. (Coffman Decl. ¶ 21).

### B. Summary of the Key Settlement Terms.

The total settlement amount is $425,000. The total settlement amount includes: (1) all settlement payments to the Rule 23 Class Members[2] and the Representative Plaintiffs and the Opt-In Plaintiffs; (2) any Service Payment approved for Representative Plaintiffs; (3) Plaintiffs' Counsel's reasonable fees and costs approved by the Court; and (4) the Settlement Administrator's costs. (Coffman Decl. ¶ 22).

---

[1] Prior to the settlement of this case, Defendant's Counsel informed Plaintiffs' Counsel that, while it maintains that it paid its employees properly, in an abundance of caution it revised its regular rate of pay calculations to include certain bonus payments in such computations.

[2] The Rule 23 Class Members are defined as: "All current and formerly hourly non-exempt employees at any Arrow senior living community in Ohio or Missouri who were paid more than forty (40) hours in any workweek that they received non-discretionary bonus payments, such as a retention bonus or a shift pick up bonus, for work extra shifts or hours beyond what the employee was scheduled to work from June 7, 2018, to the present."

Upon final approval of the FLSA collective action settlement, the Notice of Settlement of Collective Action Lawsuit will be distributed to the Representative Plaintiffs and the Opt-In Plaintiffs. Upon preliminary approval of the Rule 23 class action settlement, the Notice of Class Action Settlement will be distributed to the Rule Class Members providing them with an opportunity to opt out or object to the Settlement. Class Members will have 30 days to opt-out or object to the Settlement. (Coffman Decl. ¶ 23).

Under the terms of the Settlement, Plaintiffs' Counsel will be paid one-third of the total settlement fund for their attorneys' fees and will be reimbursed for their litigation expenses. In addition, Representative Plaintiffs will be paid service payments in the collective amount of $17,500.00. (Coffman Decl. ¶ 25).

The Rule 23 Class Members that do not opt-out of the settlement will receive a settlement payment equal to 100% of their alleged unpaid overtime resulting from Defendant's failure to include nondiscretionary bonus payments in their regular rate of pay for purposes of computing their overtime compensation. The Rule 23 Class Members that receive a payment will release their wage and hour claims only with respect to Defendants' method of calculating their regular rate of pay.

For their unpaid meal break claim, the Representative Plaintiffs and the Opt-In Plaintiffs will receive a settlement payment based on the number of workweeks worked by the Representative Plaintiffs and the Opt-In Plaintiffs during the period of January 1, 2018 until January 2, 2022 in comparison to the total number of workweeks worked by all Representative Plaintiffs and Opt-In Plaintiffs. These payments reflect approximately 1.5 of alleged missed meal breaks each pay period. (Coffman Decl. ¶ 24).

Representative Plaintiffs and the Opt-In Plaintiffs who are also Rule 23 Class Members and will receive both a payment for their unpaid meal break claim in addition to their regular rate claim. (Coffman Decl. ¶ 24).

## III. THE COURT SHOULD APPROVE THE FLSA SETTLEMENT

Settlement of claims made pursuant to § 216(b) of the FLSA are subject to approval by the Court. As explained below, Court approval is warranted.

### A. The Seven-Factor Standard Is Satisfied.

The court presiding over the settlement of an FLSA collective action may approve a proposed settlement if it "find[s] that the settlement is fair, reasonable, and adequate." *Barnes v. Winking Lizard, Inc.*, No. 1:18CV952, 2019 U.S. Dist. LEXIS 65657, at *5 (N.D. Ohio Mar. 26, 2019) (citing *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353-55 (11th Cir. 1982)). Courts in the Sixth Circuit apply seven factors to evaluate collective action settlements:

> (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest.

*UAW v. General Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007). "While these factors are helpful in guiding the analysis, the 'fairness of each settlement turns in large part on the bona fides of the parties' legal dispute,' that is, whether there are real issues and risks in the case that would lead each party to opt toward settlement." *Barnes*, 2019 U.S. Dist. LEXIS 65657 at *5. Application of these principles to this settlement demonstrates that approval is warranted.

### 1. No Indicia of Fraud or Collusion Exists.

There is no indicia of fraud or collusion, and "[c]ourts presume the absence of fraud or collusion unless there is evidence to the contrary." *White v. Premier Pallet & Recycling, Inc.*, No.

5:18-cv-1460, 2018 U.S. Dist. LEXIS 174414, at *4 (N.D. Ohio Oct. 10, 2018) (citation omitted). Here, the Agreement was achieved only after arms-length and good faith negotiations between the Parties with the assistance of a third-party neutral. Each Party had the opportunity to evaluate all necessary information to calculate the potential damages at issue in this case. (Coffman Decl. ¶¶ 26, 27). As such, there is no indicia of fraud or collusion, and this factor favors approval of the settlement.

> 2. **The Complexity, Expense and Likely Duration of Continued Litigation Favor Approval.**

The policy favoring the settlement of collective actions and other complex cases applies with particular force here. Employment cases in general, and wage-and-hour cases in particular, are expensive and time-consuming. *See, Wright v. Premier Courier, Inc.*, No. 2:16-cv-420, 2018 U.S. Dist. LEXIS 140019, at *8 (S.D. Ohio Aug. 17, 2018) ("[m]ost class actions are inherently complex and settlement avoids the costs, delays, and multitude of other problems associated with them") (citations omitted). Moreover, the Parties continue disagree over the merits of the claims at issue. (Coffman Decl. ¶ 28).

If forced to litigate this case further, the Parties would certainly engage in complex, costly, and protracted wrangling. The Settlement, on the other hand, provides substantial relief to the Settlement Class promptly and efficiently, and amplifies the benefits of that relief through the economies of class resolution. (Coffman Decl. ¶ 29).

> 3. **Investigation Was Sufficient to Allow the Parties to Act Intelligently.**

The Parties engaged in substantial investigation prior to negotiating the Settlement. Prior to filing the Action, Plaintiffs' Counsel performed a significant amount of research and factual investigation of the claims to set forth a factually specific and accurate complaint for the Court and Defendant. After the case was filed, Plaintiff and Defendant engaged in numerous discussions

7

regarding the merits of each side's respective positions. (Coffman Decl. ¶ 26). Moreover, each Party constructed a detailed damages analysis using the time and payroll data produced by Defendant. All aspects of the dispute, including the potential damages, were well understood by both sides. (Coffman Decl. ¶ 26).

### 4. The Risks of Litigation Favor Approval.

Counsel for both sides believe in the merits of their clients' positions, while also recognizing that continued litigation will be uncertain in terms of duration, cost, and result. Moreover, in the present case, Defendant raises defenses to Plaintiffs' claims, and the outcome of those defenses is uncertain as well. Accordingly, if this case is not settled, it is possible that the that the Representative Plaintiffs and the Opt-In Plaintiffs would receive no compensation or, that the receipt of compensation would only come after protracted litigation. By settling the case at this relatively early stage of the litigation, the Parties and bypass the inherent risks of litigation and achieve finality on this matter. This factor favors approval of the settlement. (Coffman Decl. ¶ 30).

### 5. Class Counsel and the Class Representative Favor Approval.

Plaintiffs' Counsel is highly experienced in wage-and-hour collective and class actions, have acted in good faith, and have represented their clients' best interests in reaching the Settlement. Plaintiffs' Counsel maintain that the Settlement is fair and reasonable, and in the best interests of Representative Plaintiffs, Opt-In Plaintiffs, and Rule 23 Class Members as a whole. (Coffman Decl. ¶ 31). Accordingly, this factor favors approval of the Settlement.

### 6. The Reaction of Absent Class Members.

There are no absent class members in the FLSA settlement. The Representative Plaintiffs and the Opt-In Plaintiffs have filed consent to join forms in this case. By doing so, they agree that

the Representative Plaintiffs have the authority to make decisions – including settlement decision – which will bind them. Accordingly, this factor weighs in favor of approval of the FLSA settlement. During the notice period that will follow preliminary approval of the settlement, Rule 23 Class Members will have an opportunity to opt out or object to the Settlement.

### 7. The Public Interest.

As the Sixth Circuit recently noted in another case involving the approval of an FLSA settlement, "there is a strong public interest in encouraging settlement of complex litigation and class action suits because they are 'notoriously difficult and unpredictable' and settlement conserves judicial resources." *Doe v. Déjà Vu Consulting, Inc.*, 925 F.3d 886, 899 (6th Cir. 2019) (quoting *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 530 (E.D. Mich. 2003)). Here, rather than face the risk and uncertainty of continued litigation, the Settlement confers immediate benefits on the Representative Plaintiffs, the Opt-In Plaintiffs and the Rule 23 Class Members, avoids the risks and expense of further litigation, and conserves judicial resources. Thus, the Court should find that this factor supports approval of the Settlement.

### B. <u>The Settlement Distributions Are Fair, Reasonable and Adequate.</u>

As a part of the scrutiny it applies to an FLSA collective action settlement, the Court must "ensure that the distribution of the settlement proceeds is equitable." *Murton v. Measurecomp, LLC*, No. 1:07CV3127, 2009 U.S. Dist. LEXIS 144222, at *22 (N.D. Ohio Aug. 10, 2009). Here, all components of the proposed distribution are proper and reasonable, and the Settlement as a whole is fair, reasonable and adequate.

### 1. The Individual Payments Are Reasonable and Adequate.

The Rule 23 Class Members that do not opt-out of the settlement will receive a settlement payment equal to 100% of their alleged unpaid overtime resulting from Defendant's failure to

include nondiscretionary bonus payments in their regular rate of pay for purposes of computing their overtime compensation. For their unpaid meal break claim, the Representative Plaintiffs and the Opt-In Plaintiffs will receive a settlement payment based on the number of workweeks worked by the Representative Plaintiffs and the Opt-In Plaintiffs during the period of January 1, 2018 until January 2, 2022 in comparison to the total number of workweeks worked by all Representative Plaintiffs and Opt-In Plaintiffs. These payments reflect approximately 1.5 missed meal breaks each pay period. (Coffman Decl. ¶ 24).

Representative Plaintiffs and the Opt-In Plaintiffs who are also Rule 23 Class Members and will receive both a payment for their unpaid meal break claim in addition to their regular rate claim. (Coffman Decl. ¶ 24).

### 2. Plaintiffs' Service Awards Are Proper and Reasonable.

The Settlement Agreement provides for service payments in the total amount of $17,500 to Representative Plaintiffs, in addition to their individual payment. Courts routinely approve service awards to named plaintiffs in class and collective action litigation, because service awards "are efficacious ways of encouraging members of a class to become class representatives and rewarding individual efforts taken on behalf of the class." *Hadix v. Johnson*, 322 F.3d 895, 897 (6th Cir. 2003). Service awards are meant to "compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *Dillworth v. Case Farms Processing, Inc.*, No. 5:08-cv-1694, 2010 U.S. Dist. LEXIS 20446, at *17 (N.D. Ohio Mar. 8, 2010).

Here, Representative Plaintiffs contributed significant time, effort, and detailed factual information enabling Plaintiffs' Counsel to evaluate the strength of this case, and reach a settlement of this matter that, in Plaintiffs' Counsel's opinion, fairly and adequately compensates the

Representative Plaintiffs and the Opt-In Plaintiffs for their alleged unpaid wages. As such, the time and effort the Representative Plaintiffs provided supports the requested service payments. (Coffman Decl. ¶ 25).

### 3. The Attorney Fees to Plaintiffs' Counsel Are Proper and Reasonable.

After the Court has confirmed that the terms of settlement are fair to the Representative Plaintiffs and the Opt-In Plaintiffs, it may review the Parties' agreement as to the provision of fees and costs to Plaintiffs' Counsel. The FLSA provides that a Court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and the costs of the action." 29 U.S.C. § 216(b). In *Fegley v. Higgins*, 19 F.3d 1126, 1134 (6th Cir. 1994), *cert. denied*, 513 U.S. 875 (1994), the Sixth Circuit held that the FLSA's mandatory attorney fee provision "insure[s] effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances," and thus "encourage[s] the vindication of congressionally identified policies and rights." *Fegley*, 19 F.3d at 1134 (quoting *United Slate, Tile & Composition Roofers, Damp and Waterproof Workers Ass'n, Local 307 v. G&M Roofing & Sheet Metal Co.*, 732 F.2d 495, 502 (6th Cir.1984)).

Here, Representative Plaintiffs are requesting that the Court approve as reasonable attorneys' fees of $141,666.67, representing one-third of the settlement fund. A one-third fee is "typical for attorney's fees in a common fund" for wage and hour litigation in this District. *Hebert v. Chesapeake Operating, Inc.*, 2019 WL 4574509, at *4-8 (S.D. Ohio Sept. 20, 2019). In fact, in common fund cases, the "percentage approach is 'the most appropriate method for determining reasonable attorneys' fees' in wage and hour cases." *Id.* at *4 quoting *Swigart v. Fifth Third Bank*, 2014 WL 3447947, at *5 (S.D. Ohio July 11, 2014)). This "is a normal fee amount in a wage and hour case." *Brandenburg*, 2019 WL 6310376, *5 (S.D. Ohio Nov. 25, 2019) (citing *Carr v. Bob*

*Evans Farms, Inc.*, No. l:17-cv-1875, 2018 WL 5023950 at *4 (N.D. Ohio July 27, 2018)); *Estate of McConnell v. EUBA Corp.*, No. 3:18-cv-355, 2021 WL 1966062, *5-7 (S.D. Ohio May 17, 2021).

"Absent compelling reasons to the contrary," courts apply the percentage method in wage and hour common fund cases, "as it best reflects FLSA's employee-protection objective." *Dewald v. Time Warner Cable Inc.*, No. 16-cv-1129, 2021 WL 687246 at *5 (S.D. Ohio Feb. 16, 2021). "[T]he percentage approach encourages efficiency, judicial economy, and aligns the interests of the lawyers with the class[]." *In re Cardinal Health Inc. Sec. Litigations.*, 528 F.Supp.2d 752, 762 (S.D. Ohio 2007). "[W]hile the lodestar approach incentivizes attorneys to work more hours, without regard to the quality of the output or the class's needs, the percentage approach instead 'rewards counsel for success and penalizes it for failure.'" *Id.* Thus, the percentage method is preferred. *Arp. v. Hohla & Wyss Enterprises, LLC*, 2020 WL 6498956 at *6 (S.D. Ohio Nov. 5, 2020); *Rikos v. Proctor & Gamble Co.*, No. 1:11-cv-226, 2018 U.S. Dist. LEXIS 72722, at *22, 2018 WL 2009681 (S.D. Ohio Apr. 30, 2018) (Black, J.) (internal citations omitted); *Feiertag v. DDP Holdings, LLC*, No. 14-cv-2643, 2016 U.S. Dist. LEXIS 122297, at *20–21, 2016 WL 4271208 (S.D. Ohio Sep. 9, 2016); *Dillow v. Home Care Network, Inc.*, No. 1:16-cv-612, 2018 U.S. Dist. LEXIS 170579, at *16, 2018 WL 4776977 (S.D. Ohio Oct. 3, 2018).

Further, Plaintiffs' Counsel accepted this case on a contingent fee basis and advanced all litigation fees, costs and expenses. (Coffman Decl. ¶ 32). "In doing so, Class Counsel assumed a real risk in taking on this case, preparing to invest time, effort, and money over a period of years with no guarantee of recovery. This factor weighs in favor of approving the requested fee award." *Ganci v. MBF Insp. Servs.*, No. 2:15-cv-2959, 2019 U.S. Dist. LEXIS 207645, at *19 (S.D. Ohio Dec. 3, 2019); *see also, Barnes v. Winking Lizard, Inc.*, No. 1:18CV952, 2019 U.S. Dist. LEXIS

65657, at *15 (N.D. Ohio Mar. 26, 2019) ("Class Counsel provided representation on a purely contingency fee basis, advancing all litigation costs and receiving no payment unless [and] until there was a recovery, and should be compensated for that risk").

Finally, Courts in this district acknowledge that "[w]age-and-hour collective and class actions are, by their very nature, complicated and time-consuming." *Barnes*, 2019 U.S. Dist. LEXIS 65657, at *16. Given the inherent complexity of a wage and hour collective action and the disputed issues of fact and law in this case, an award of one-third of the settlement fund appropriately compensates Plaintiffs' Counsel for their prosecution of this case, and advances the public's interests in rewarding attorneys who bring wage and hour cases. *See, e.g., Gentrup v. Renovo Servs., LLC*, No. 1:07CV430, 2011 U.S. Dist. LEXIS 67887, at *14 (S.D. Ohio June 24, 2011) ("society has a stake in rewarding the efforts of the attorneys who bring wage and hour cases, as these are frequently complex matters.").

  **4.** **The Court Should Authorize Reimbursement to Plaintiffs' Counsel of Their Out-of-Pocket Expenses Incurred In This Case.**

Plaintiffs' Counsel should also be reimbursed their out-of-pocket expenses and costs, which total $29,384.98 (Coffman Decl. ¶ 33). "Under the common fund doctrine, Class Counsel is entitled to reimbursement of all reasonable out-of-pocket expenses and costs incurred in the prosecution of claims and in obtaining settlement." *Brandenburg v. Cousin Vinny's Pizza, LLC*, No. 3:16-cv-516, 2019 U.S. Dist. LEXIS 204371, at *20 (S.D. Ohio Nov. 25, 2019). In fact, "[e]xpense awards are customary when litigants have created a common settlement fund for the benefit of a class." *Id.; see also, Harsh v. Kalida Mfg.*, No. 3:18-cv-2239, 2021 U.S. Dist. LEXIS 175869, at *23 (N.D. Ohio Sep. 13, 2021) ("Under the common fund doctrine, Class Counsel is entitled to reimbursement of all reasonable out-of-pocket expenses and costs incurred in the prosecution of claims and in obtaining settlement").

13

## IV. THE COURT SHOULD PRELIMINARILY APPROVE THE CLASS ACTION SETTLEMENT.

The proposed Class Action Settlement of Class Members' Ohio state law claims is subject to approval by the Court pursuant to Fed. R. Civ. P. 23(e). As shown below, the Court's preliminary approval is warranted.

### A. Preliminary Approval of the Settlement Under Rule 23(b) Is Warranted.

#### 1. Certification of the Settlement Class Is Appropriate.

A proposed settlement class must satisfy the requirements of Rule 23. *UAW v. General Motors Corp.,* 497 F.3d 615, 626 (6th Cir. 2007) (citing *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 620 (1997)). The proposed Class satisfies those requirements.

The proposed class meets Rule 23(a)'s requirements of numerosity, commonality, typicality, and adequacy of representation. *See Senter v. General Motors Corp.*, 532 F.2d 511 (6th Cir.), *cert. denied*, 429 U.S. 870 (1976); *UAW v. General Motors Corp.,* 497 F.3d at 626. The Class, consisting of 206 members, is "so numerous that joinder of all members is impracticable." There is a common issue of law and fact presented by the Rule 23 Class Members' claim under Ohio and Missouri law, *w*hether Defendant failed to pay Representative Plaintiffs and the Rule 23 Class all of their overtime compensation. Representative Plaintiffs are adequate representatives of the Rule 23 Class, in that they have common interests with other class members and have vigorously prosecuted the interests of the class through qualified counsel. *Rutherford v. City of Cleveland*, 137 F.3d 905 (6th Cir. 1998).

The Rule 23 Class further satisfies Rule 23(b)(3)'s requirements of predominance and superiority. *Senter*, 532 F.2d at 522; *UAW v. General Motors Corp.,* 497 F.3d at 626. The unpaid overtime issues presented predominate over any individual questions. Class-wide resolution of this controversy is superior to the alternative of litigating dozens of individual lawsuits. *General Tel.*

*Co. v. Falcon*, 457 U.S. 147, 159 (1982) (class certification advances "the efficiency and economy of litigation which is a principal purpose of the procedure"); *Day v. NLO*, 851 F. Supp. 869, 883 (S.D. Ohio 1994) (of equal importance "are considerations of the avoidance of the inequality resulting from piecemeal litigation as well as a concern to provide access to the courts for litigants with limited resources and common claims").

### 2. The Class Notices Satisfy Rule 23 and Due Process.

Rule 23(e) requires the Court to "direct notice in a reasonable manner to all class members who would be bound" by the settlement. *Bailey v. White*, 320 Fed. Appx. 364, 2009 WL 928595 (6th Cir. 2009). The notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *UAW v. General Motors Corp.,* 497 F.3d 615, 626 (citing *Mullane v. Cent. Hanover Bank & Trust Co.,* 339 U.S. 306, 314 (1950)).

Reasonable notice to class members is required by due process as well. *Fidel v. Farley*, 534 F.3d 508 (6th Cir. 2008) (citing *DeJulius v. New England Health Care Employees Pension Fund,* 429 F.3d 935, 943-44 (10th Cir.2005) (citing *Mullane,* 339 U.S. at 313; *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 173 (1974). Due process "does not, however, require *actual* notice to each party intended to be bound by the adjudication of a representative action." *Fidel v. Farley*, 534 F.3d 508 (6th Cir. 2008) (emphasis by the court) (citing *DeJulius,* 429 F.3d at 944 (citing *Mullane,* 339 U.S. at 313-14); *In re Integra Realty Res., Inc.,* 262 F.3d 1089, 1110-11 (10th Cir. 2001); *Silber v. Mabon,* 18 F.3d 1449, 1453-54 (9th Cir.1994))). The issue is not whether all class members received notice, "but whether the class as a whole had notice adequate to flush out whatever objections might reasonably be raised to the settlement." *Fidel*, 534 F.3d at 514 (quoting *Torrisi v. Tucson Elec. Power Co.,* 8 F.3d 1370, 1375 (9th Cir.1993)).

15

The "individual notice" requirement of Rule 23 and due process is fulfilled by sending written notice to class members by first-class mail at the addresses shown in the defendant's business records. *Grunin v. International House of Pancakes* (8th Cir. 1975), 513 F.2d 114, 120, *cert. denied* (1975), 423 U.S. 864 (1975) (citing *Eisen*, 417 U.S. at 172-77). The Eighth Circuit noted that, in *Eisen*, "the Supreme Court specifically held that individualized notice by mail to the last known address was the 'best notice practicable' in a class action." *Grunin*, 513 F.2d at 121.

In the present case, the proposed notice to the Rule 23 Class Members satisfies these requirements. Under the terms of the Agreement and the proposed Preliminary Order, the notice will be sent to the Rule 23 Class Members by first-class mail using the addresses shown in Defendant's records. The notice also gives the Rule 23 Class Members detailed information on how to object to, or opt out of, the settlement. Accordingly, the Notice of Class Action Settlement satisfies Rule 23 and due process requirements.

### B. Approval of the Settlement Under Rule 23(e) Is Warranted.

Under Rule 23(e), a class settlement must be "fair, reasonable, and adequate" under a seven-factor standard discussed below. *UAW v. General Motors Corp.,* 497 F.3d 615, 626 (citing *Granada Invs., Inc. v. DWG Corp.,* 962 F.2d 1203, 1205 (6th Cir.1992); *Williams v. Vukovich,* 720 F.2d 909, 922-23 (6th Cir.1983)). The Sixth Circuit has recognized that "the law generally favors and encourages the settlement of class actions." *Franks v. Kroger Co.*, 649 F.2d 1216, 1224 (6th Cir. 1981). Therefore, when considering the below factors, the courts apply a "strong presumption" in favor of finding a settlement to be fair. *Dail v. George A. Arab, Inc.,* 391 F. Supp. 2d 1142, 1145-46 (M.D. Fla. 2005) (citing *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977)). *Accord, Sweet v. General Tire & Rubber Co.*, 1982 WL 278, *5 (N.D. Ohio Mar. 17, 1982).

### 1. The Seven-Factor Standard Is Satisfied.

The Sixth Circuit uses the same seven factors to evaluate class action settlements as it does to evaluate FLSA collective action settlements:

> (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest.

*UAW v. General Motors Corp.*, 497 F.3d 615, 626 (6th Cir. 2007) (citing *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205 (6th Cir.1992); *Williams v. Vukovich,* 720 F.2d 909, 922-23 (6th Cir.1983)), *quoted in Crawford*, 2008 WL 4724499 at *3. As discussed in detail above, the seven-factor standard supports approval of the Settlement.

On the basis of these factors, as well as all of the other factors discussed above, the Court should conclude that the Settlement is fair, reasonable, and adequate, and grant preliminary and later final approval under Rule 23(e).

## VIII. <u>CONCLUSION</u>

For the foregoing reasons, the Parties respectfully request that this Court enter the Proposed Order, attached to hereto as **Exhibit 5**:

1. Giving final approval of the Parties' settlement of the collective claims brought pursuant to the Fair Labor Standards Act as reflected in the Settlement Agreement;

2. Giving preliminary approval of the Parties' settlement of the class action claims brought pursuant to Fed. R. Civ. P. 23(e), and approve the distribution of the Notice of Proposed Settlement of Class Action and Fairness Hearing;

3. Scheduling a Fairness Hearing to take place approximately 90 days after granting preliminary approval of the Parties' class action settlement;

4. Designating Shannon M. Draher of Nilges Draher LLC and Matthew J.P. Coffman of Coffman Legal, LLC as Class Counsel, and preliminarily approving their request for attorneys' fees and costs; and

5. Preliminarily approving service payments for Representative Plaintiffs Kendall Olin-Marques, Deborah Roberts, and Jadan Cook.

Respectfully Submitted,

| | |
|---|---|
| /s/ Shannon M. Draher | /s/ Rebecca J. Bennett (with permission) |
| Shannon M. Draher (OH 0074304) | Rebecca J. Bennett (OH 0069566) |
| **NILGES DRAHER LLC** | **Ogletree, Deakins, Nash, Smoak & Stewart, PC** |
| 7034 Braucher St NW, Suite B | Key Tower |
| North Canton, OH 44720 | 127 Public Square, Suite 4100 |
| Telephone: (330) 470-4428 | Cleveland, OH 44114 |
| Facsimile: (330) 754-1430 | Telephone: (216) 241-6100 |
| Email: sdraher@ohlaborlaw.com | Facsimile: (216) 357-4733 |
| | Email: rebecca.bennett@ogletree.com |
| Matthew J.P. Coffman (OH 0085586) | |
| **COFFMAN LEGAL, LLC** | *Counsel for Defendant* |
| 1550 Old Henderson Road, Suite 126 | |
| Columbus, OH 43220 | |
| Telephone: (614) 949-1181 | |
| Facsimile: (614) 386-9964 | |
| Email: mcoffman@coffmanlegal.com | |

*Counsel for Plaintiffs*

# CERTIFICATE OF SERVICE

I hereby certify that on November 28, 2022 the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ Shannon M. Draher
Shannon M. Draher (OH 0074304)

*Counsel for Representative Plaintiffs*